[THOMAS E. MOSS
UNITED STATES ATTORNEY
KIM R. LINDQUIST
ASSISTANT UNITED STATES ATTORNEY
TERRY L. DERDEN
FIRST ASSISTANT UNITED STATES ATTORNEY
and CRIMINAL CHIEF
DISTRICT OF IDAHO
WELLS FARGO BUILDING
877 WEST MAIN STREET, SUITE 201
BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
**MAILING ADDRESS:**
**BOX 32**
**BOISE, IDAHO 83707**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Cr. No. C-EJL |
| vs. | INDICTMENT |
| SAMI OMAR AL-HUSSAYEN, Defendant. | (Vio. 18 U.S.C. 1546(a); 1001(a)(1) and (2), 3237 and 3238) |

THE GRAND JURY CHARGES:

At all times pertinent to this Indictment:

**VISA FRAUD AND FALSE STATEMENT**

**<u>The Student Visas</u>**

**Background**

1. In order for a foreign student to study in the United States on an F-1 student visa

the student must declare and promise under oath to United States authorities that the student seeks a presence in the United States **solely for the purpose of pursuing the student's course of studies**. In relation thereto, the foreign student must truthfully and fully declare his associations with organizations to the appropriate United States Government authorities in order for those authorities to evaluate any such association and related activities in relation to the interests of the United States.

2. **SAMI OMAR AL-HUSSAYEN** was a citizen of Saudi Arabia. Between about August 7, 1994 and September 23, 1998, **AL-HUSSAYEN** studied in the United States as a foreign student. He studied at Ball State University in Muncie, Indiana, where he obtained a Masters of Science degree in computer science; and at Southern Methodist University in Dallas, Texas.

3. On or about September 23, 1998, **AL-HUSSAYEN** applied to the University of Idaho at Moscow, Idaho, by submitting an International Application Form requesting that he be admitted to the Computer Science PhD program for the Spring 1999 Semester.

4. In or about January, 1999, **AL-HUSSAYEN** was admitted to the Computer Science PhD program at the University of Idaho, with an emphasis on computer security and intrusion techniques. University of Idaho records indicated that he began his studies the Spring 1999 Semester. At the time he published his permanent address as 311 Sweet Ave., Apt. #6, Moscow, Idaho.

**The year 1999 transactions**

5. On or about May 17, 1999, United States Immigration and Nationalization (INS) Form I-20 was issued by the University of Idaho, allowing **AL-HUSSAYEN** to study in the Computer Science PhD program beginning no later than August 24, 1999, and ending no later than December 17, 2004.

6. On or about July 17, 1999, while outside the United States, **AL-HUSSAYEN** signed the Student Certification of the INS Form I-20 at section #11, which read in pertinent part:

> I have read and agreed to comply with the terms and conditions of my admission. . . . I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, **and <u>solely</u> for the purpose of pursuing a full course of study at [the University of Idaho].** I also authorize the named school to release any information from my records which is needed. [Emphasis added.]

**AL-HUSSAYEN** falsely made said certification, knowing of his internet and business activities alleged hereafter. On or about July 20, 1999, the United States Government issued an F-1 student visa to **AL-HUSSAYEN** at Riyadh, Saudi Arabia. The visa was valid for twenty-four months, or until July 20, 2001. (See Counts One and Two hereafter.)

7. On or about August 11, 1999, **AL-HUSSAYEN** was admitted by the United States Government into the United States at John F. Kennedy International Airport in New York City, New York, as an F-1 student. **AL-HUSSAYEN** was admitted into the United States by the United States Government pursuant to the July 20, 1999 visa and in direct reliance upon **AL-HUSSAYEN's** certification on the INS Form I-20 dated July 17, 1999. (See Count Three hereafter.)

**The year 2000 transactions**

8. On or about July 7, 2000, a second INS Form I-20 was issued by the University of Idaho and designated "for Continued attendance at this school" and in order "to add dependant." On or about this same day and in Moscow, Idaho, **AL-HUSSAYEN** signed the Student Certification of said INS Form I-20 at section #11 and which read in pertinent part:

> I have read and agreed to comply with the terms and conditions of my admission. . . . I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, **and <u>solely</u> for the purpose of pursuing a full course of study at [the University of Idaho].** I also authorize the named school to release any information from my records which is needed. [Emphasis added.]

**AL-HUSSAYEN** falsely made said certification, knowing of his internet and business activities alleged hereafter. (See Counts Four and Five hereafter.) On or about July 9, 2000,

**AL-HUSSAYEN** departed from the United States at the John F. Kennedy International Airport in New York City, New York.

9. On or about August 25, 2000, **AL-HUSSAYEN** was admitted into the United States by the United States Government at Washington, D.C., as an F-1 student. **AL-HUSSAYEN** was admitted into the United States by the United States Government pursuant to the student visa dated July 20, 1999 as previously referenced and in reliance upon **AL-HUSSAYEN's** certification on the INS Form I-20 dated July 7, 2000. (See Count Six hereafter.)

**The year 2002 transactions**

10. On or about January 10, 2002, **AL-HUSSAYEN** departed the United States at the John F. Kennedy International Airport in New York City, New York. On or about January 13, 2002, **AL-HUSSAYEN** signed and submitted to the United States embassy a DOS Form DS-156 for the purpose of obtaining another F-1 student visa. Section 36 of the form reads in pertinent part:

> I certify that I have read and understand all the questions set forth in this application and the answers I have furnished on this form are true and correct to the best of my knowledge and belief. I understand that any false or misleading statement may result in the permanent refusal of a visa or denial of entry into the United States. I understand that possession of a visa does not automatically entitle the bearer to enter the United States of America upon arrival at a port of entry if he or she is found inadmissable.

At section nineteen of the Form DS-156, **AL-HUSSAYEN** stated that the purpose of his entry into the United States was to "study;" and, at section twenty-six, that he would do so at the University of Idaho. At section 20 he stated his permanent address in the United States to be 311 Sweet Ave. #6, Moscow, Idaho, 83843. As part of his application for the F-1 student visa, **AL-HUSSAYEN** relied upon and/or submitted the INS Form I-20 dated July 7, 2000, as previously referenced.

11. On or about January 14, 2002, the DOS Form DS-156 was formally stamped as received by the United States Government at the United States Embassy in Riyadh, Kingdom of Saudi Arabia. However, the application was refused because the birth date of **AL-**

**HUSSAYEN** on the visa application and the July 7, 2000 INS Form I-20 did not match the birth date on his passport.

12. On or about January 14, 2002, and in conjunction with the same F-1 student visa application, **AL-HUSSAYEN** submitted a DOS Form DS-157 Supplemental Non-immigrant Visa Application to the United States Government at the United States Embassy in Riyadh, Kingdom of Saudi Arabia, which DOS Form DS-157 was attached to the original DOS Form DS-156 submitted on January 14, 2002. Section 13 of the DOS Form DS-157 required the applicant to "[l]ist all Professional, Social, Charitable Organizations to Which You Belong (Belonged) or Contribute (Contributed) or with Which You Work (Have Worked)." **AL-HUSSAYEN** listed "ACM & IEEE." ("ACM" stands for the Association for Computive Machinery, and "IEEE" stands for the Institute of Electrical and Electronic Engineers.) **AL-HUSSAYEN** listed no other affiliations. **AL-HUSSAYEN** falsely and intentionally did not list the Islamic Assembly of North America (hereafter the IANA) and other entities. (See Counts Seven and Eight hereafter.)

13. On or about March 19, 2002, the University of Idaho provided an INS Form I-20 for **AL-HUSSAYEN** "for Continued attendance at this school" and to "correct birth-date." On or about April 6, 2002, **AL-HUSSAYEN** signed the Student Certification of the INS Form I-20 at section eleven, which stated in pertinent part:

> I have read and agreed to comply with the terms and conditions of my admission. . . . I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, **and solely for the purpose of pursuing a full course of study at [the University of Idaho].** I also authorize the named school to release any information from my records which is needed. [Emphasis added.]

**AL-HUSSAYEN** falsely made the certification, knowing of his internet and business activities alleged hereafter. On or about the same day of April 6, 2002, **AL-HUSSAYEN** formally submitted the INS Form I-20 dated April 6, 2002, to the United States Government at the United States Embassy in Riyadh, Kingdom of Saudi Arabia, and the United States Government issued **AL-HUSSAYEN** an F-1 student visa in direct reliance upon **AL-**

**HUSSAYEN's** certifications on the DOS Form DS-156 dated January 14, 2002, and attached DOS Form DS-157, together with the INS Form I-20 dated April 6, 2002. (See Counts Nine and Ten hereafter.)

14. On or about May 9, 2002, **AL-HUSSAYEN** was admitted by the United States Government into the United States at the John F. Kennedy International Airport in New York City, New York, as an F-1 student by virtue of the F-1 student visa issued April 6, 2002, and in direct reliance upon **AL-HUSSAYEN'S** certifications on the DOS Form DS-156 dated January 14, 2002, and attached DOS Form DS-157, together with the INS Form I-20 dated April 6, 2002. During the admission at the John F. Kennedy International Airport, **AL-HUSSAYEN** was inspected by INS and Customs officials. During the inspections, the INS Form I-20 dated April 6, 2002, was photocopied by the Customs officials, with the Customs officials retaining the copy and the original being returned to **AL-HUSSAYEN.** (See Count Eleven hereafter.)

**<u>The Web-site Activities</u>**

15. From at least October 2, 1998, until the date of this Indictment, **AL-HUSSAYEN** engaged in computer web-site activities that exceeded his course of study at the University of Idaho. These activities included expert computer services, advice, assistance and support to organizations and individuals, including the IANA, in the form of web-site registration, management, administration and maintenance. A number of those web-sites accommodated materials that ~~both~~ advocated violence against the United States.

16. The IANA was incorporated in 1993 in Colorado as a non-profit, charitable organization. It maintained offices in Ann Arbor, Michigan. Its official mission statement was that of *Da'wa*: the proselytizing and spreading the word of Islam. The IANA did this, in part, by providing a number of media outlets as vehicles for advocating Islam, such as internet web-sites with "bulletin boards," internet magazines, toll-free telephone lines, and audio ("radio.net") services. The IANA solicited and received donations of monies both from within the United States and without. The IANA also hosted regular Islamic

conferences in the United States, with participation by individuals affiliated with other charitable organizations also located within the United States.

17. **AL-HUSSAYEN** was the formal registered agent for the IANA in Idaho (since May 11, 2001) and a business associate of the IANA in its purpose of *Da'wa* (proselytizing), which included the web-site dissemination of radical Islamic ideology the purpose of which was indoctrination, recruitment of members, and the instigation of acts of violence and terrorism.

18. **AL-HUSSAYEN** was either the registrant or the administrative contact for a number of internet web-sites which either belonged to or were linked to the IANA. A number of said IANA-related web-sites were registered to **AL-HUSSAYEN** directly, to the IANA or to Dar Al-Asr, a Saudi Arabian company that provided web hostings on the internet. **AL-HUSSAYEN** registered web-sites on behalf of Dar Al-Asr, identifying himself as the administrative point of contact for Dar Al-Asr and giving his Moscow, Idaho street address and University of Idaho e-mail address for reference.

19. Of the afore-referenced web-sites, **AL-HUSSAYEN** was the sole registrant of web-sites **www.alasr.ws** (created September 11, 2000), **www.cybermsa.org** (created March 15, 2001) and **www.liveislam.net** (created July 8, 2002). Web-sites **www.alasr.net** (created August 15, 1999), **www.almawred.com** (created November 1, 1999) and **www.heejrah.com** (February 22, 2000) were registered to Dar Al-Asr, with **AL-HUSSAYEN** as the administrative contact person. Web-site **www.almanar.net** (created October 2, 1998) was registered to Al-Manar Al-Jadeed Magazine, with **AL-HUSSAYEN** as the administrative contact person. **Iananet.org** (created August 11, 1995) was registered to IANA and designed and maintained by the web-site entity Dar Al-Asr. **Ianaradionet.com** (created May 25, 1999) was registered to IANA, with **AL-HUSSAYEN** as the head of its supervisory committee and member of its technical committee. **Islamway.com** (created August 18, 1998) was registered to IANA, with direct links to **AL-HUSSAYEN's** web-sites, including **www.alasr.ws** and **www.cybersma.org**. The registration of web-sites www.alhawali.org and www.alhawali.com

(both created November 18, 2000) referenced Al-Asr and **AL-HUSSAYEN**, with **AL-HUSSAYEN** as the administrative contact for **www.alhawali.com.** These two web-sites corresponded to a radical sheikh referenced in paragraph 21 hereafter. Web-site www.islamtoday.net (created March 17, 2000) was related to a radical sheikh also referenced in paragraph 21 hereafter and posted articles to some of the Dar Al-Asr and **AL-HUSSAYEN** web-sites.

20. One of the afore-referenced web-sites registered by **AL-HUSSAYEN** was **www.alasr.ws.** On September 11, 2000, **AL-HUSSAYEN** registered the www.alasr.ws web-site. In about June of 2001, an article entitled "Provision of Suicide Operations" was published on the internet magazine of the website **www.alasr.ws**. The article was written by a radical Saudi sheikh. A portion of the article read as follows:

> The second part is the rule that the *Mujahid* (warrior) must kill himself if he knows that this will lead to killing a great number of the enemies, and that he will not be able to kill them without killing himself first, or demolishing a center vital to the enemy or its military force, and so on. This is not possible except by involving the human element in the operation. In this new era, this can be accomplished with the modern means of bombing or **bringing down an airplane** on an important location that will cause the enemy great losses. [Emphasis added.]

21. Www.alasr.ws and other web-sites registered or linked to, or technically advised by **AL-HUSSAYEN,** including www.islamway.com (previously mentioned), also posted other violent *jihad* (holy war)-related messages by other radical sheikhs, including those referenced in preceding paragraph 19.

**Financial and Business Activities**

22. From on or about August 17, 1994, until the date of this Indictment, **AL-HUSSAYEN**, at various times, maintained at least six United States bank accounts in Indiana, Texas, Idaho and Michigan. From at least January 23, 1997, until the date of this Indictment, **AL-HUSSAYEN** used said bank accounts to receive large sums of monies from within and without the United States, and to transfer and cause to be transferred large sums of monies to the IANA and other organizations and individuals.

23. From at least January 23, 1997, until the date of this Indictment, **AL-HUSSAYEN** received into and disbursed out of his bank accounts approximately $300,000.00 in excess of the university study-related funds he received during the same period of time, such as the monthly stipend he was given by the Saudi Arabian Government, and the living expenses that corresponded thereto. These excess funds included $49,992.00 paid to **AL-HUSSAYEN** on September 10, 1998, and $49,985.00 paid to him on September 25, 1998.

24. From at least November 16, 1999, to the date of this Indictment, **AL-HUSSAYEN** made disbursements of the excess funds referenced in the preceding paragraph to the IANA and to the IANA's officers, including a leading official of the IANA. A portion of these funds was used to pay operating expenses of the IANA, including salaries of IANA employees. Furthermore, in 1999, 2000 and 2001 wire transfers were made from **AL-HUSSAYEN** to individuals in Cairo, Egypt; Montreal, Canada; Riyadh, Kingdom of Saudi Arabia; Amman, Jordan; and Islamabad, Pakistan. **AL-HUSSAYEN** also made disbursements to other organizations and individuals associated therewith during the time referenced in this paragraph.

25. From at least November 16, 1999, to the date of this Indictment, **AL-HUSSAYEN** maintained frequent business contact with the leading IANA official referenced above. Not only did **AL-HUSSAYEN** disburse money directly to the official in the form of wire transfers and personal checks, their relationship also included the maintenance of a checking account in a Michigan bank in **AL-HUSSAYEN's** name alone, but with the official's home address and the official's apparently exclusive use of the account. Among the deposits into the account was a $4,000.00 wire transfer from **AL-HUSSAYEN,** 311 Sweet Avenue, Apt 6, Moscow, Idaho, to **AL-HUSSAYEN,** 219 Fieldcrest Street, Ann Arbor, Michigan. In addition, numerous telephone calls between **AL-HUSSAYEN** and the official were made during the time referenced in this paragraph.

26. From at least March of 1995 until about February of 2002, the IANA received into its bank accounts approximately three million dollars ($3,000,000.00), including the funds received from **AL-HUSSAYEN** as referenced above, and disbursed approximately the same amount. The deposits included a three hundred thousand dollar ($300,000.00) transfer from a Swiss bank account on or about May 14, 1998.

27. From about December of 1994 to about July of 2002, **AL-HUSSAYEN** traveled and otherwise funded travel for other individuals, including travel related to the IANA, through **AL-HUSSAYEN's** bank accounts and to locations in numerous states, as well as foreign countries.

28. From at least January 1, 1997, until on or about August 28, 2002, telephones corresponding to **AL-HUSSAYEN** had contact with telephones subscribed to individuals or entities in numerous states, as well as foreign countries. Subscribers corresponding to or associated with some of the numbers included the IANA and the source of the $49,992.00 and $49,985.00 transfers previously referenced paragraph 23.

**THE VIOLATIONS**

In material reliance upon the information contained in the INS I-20 forms and the DOS Forms DS- 156 and DS-157 as heretofore referenced, the United States Government issued **AL-HUSSAYEN** F-1 student visas and allowed him to enter and remain in the United States. However, **AL-HUSSAYEN** entered into and remained in the United States for purposes other than that of solely pursuing his studies, including, but not limited to, material support of the IANA and others by means of his web-site and business activities, and knowingly and wilfully made false statements and omissions to the authorities of the United States in relation thereto. By not truthfully stating and revealing the nature and extent of his activities and affiliations in the United States, **AL-HUSSAYEN** thereby deprived the authorities of the United States of the knowledge thereof and the opportunity to evaluate and address the same within the context of the laws of the United States, resulting in felony violations by the Defendant, **SAMI OMAR AL-HUSSAYEN**, consisting of Counts One through Eleven.

COUNT ONE
**FALSE STATEMENT TO THE UNITED STATES**
(Violation 18 U.S.C. 1001(a)(2) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about July 17, 1999, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to **SAMI OMAR AL-HUSSAYEN's** status as a foreign student in the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238. (See previous paragraphs 5 and 6.)

COUNT TWO
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about July 17, 1999, until the date of this Indictment, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration

laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1546(a) and 3238. (See previous paragraphs 5 and 6.)

COUNT THREE
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3237)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about August 11, 1999, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States, (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented to United States Government authorities a student visa procured by means of a false statement and claim and other document containing such false statement and claim; in violation of Title 18, United States Code, Sections 1546(a) and 3237. (See previous paragraphs 5 through 7.)

COUNT FOUR
**FALSE STATEMENT TO THE UNITED STATES**
(Violation 18 U.S.C. 1001(a)(2) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about July 7, 2000, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to **SAMI OMAR AL-HUSSAYEN's** status as a foreign student in the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238. (See previous paragraph 8.)

COUNT FIVE
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

RC 2000 KM

On or about July ~~0~~7, ~~1999~~, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the

United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1546(a) and 3238. (See previous paragraph 8.)

COUNT SIX
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3237)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about August 25, 2000, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States, (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented to United States Government authorities a student visa procured by means of a false statement and claim and other document containing such false statement and claim; in violation of Title 18, United States Code, Sections 1546(a) and 3237. (See previous paragraphs 8 and 9.)

COUNT SEVEN
**FALSE STATEMENT TO THE UNITED STATES**
(Violation 18 U.S.C. 1001(a)(2) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about January 14, 2002, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to **SAMI OMAR AL-HUSSAYEN's** status as a foreign student in the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted Department of State (DOS) form DS-156 and form DS-157, thereby knowingly and wilfully failing and refusing to inform United States Government authorities of his involvement with the Islamic Assembly of North America and other entities; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238. (See previous paragraphs 10 through12.)

COUNT EIGHT
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about January 14, 2002, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student

visa, signed and submitted Department of State (DOS) form DS-156 and form DS-157, thereby knowingly and wilfully failing and refusing to inform United States Government authorities of his involvement with the Islamic Assembly of North America and other entities; in violation of Title 18, United States Code, Sections 1546(a) and 3238. (See previous paragraphs 10 through 12.)

COUNT NINE
**FALSE STATEMENT TO THE UNITED STATES**
(Violation 18 U.S.C. 1001(a)(2) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about April 6, 2002, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to **SAMI OMAR AL-HUSSAYEN's** status as a foreign student in the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238. (See previous paragraphs 10 through 13.)

COUNT TEN
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about April 6, 2002, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1546(a) and 3238. (See previous paragraphs 10 through 13.)

COUNT ELEVEN
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3237)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about May 9, 2002, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an

application and other document required by the immigration laws and regulations of the United States, (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented to United States Government authorities a student visa procured by means of a false statement and claim and other document containing such false statement and claim; in violation of Title 18, United States Code, Sections 1546(a) and 3237. (See previous paragraphs 10 through 14.)

Dated this 13th day of ~~January~~ February, 2003.

A TRUE BILL

FOREPERSON

THOMAS E. MOSS
UNITED STATES ATTORNEY

KIM R. LINDQUIST
Assistant United States Attorney

TERRY L. DERDEN
First Assistant United States Attorney
Chief, Criminal Section

# CRIMINAL COVERSHEET

DEFENDANT'S NAME: Sami Omar Al-Hussayen

Juvenile: No

DEFENDANT'S STREET ADDRESS:

Service Type: Sealed

DEFENSE ATTORNEY:
ADDRESS:

Interpreter: No
If yes, language:

TELEPHONE NO.:

INVESTIGATING AGENT & AGENCY: Michael J. Gneckow, Federal Bureau of Investigation
TELEPHONE NO.: (208) 664-5128

**CASE INFORMATION:** (List any miscellaneous, magistrate, CVB or other related defendants/case numbers).

## CRIMINAL CHARGING INFORMATION

_ Complaint     X Indictment     _ Information     _ Superseding Indictment

X Felony     _Class A Misdemeanor     _ Class B or C Misdemeanor (Petty Offense)

County of Offense: Latah     Estimated Trial Time: 10 days

| *TITLE/SECTION* | *COUNT* | *BRIEF DESCRIPTION* | *PENALTIES (Include Supervised Release and Special Assessment)* |
|---|---|---|---|
| *18 U.S.C. §§ 1001(a)(1) and (2), 3238* | *1, 4, 7, 9* | *False Statement to the United States* | *Each count: Incarceration for not more than 5 years and/or $250,000 fine; 3 years supervised release; $100 special assessment* |
| *18 U.S.C. §§ 1546(a), 3237, 3238* | *2, 3, 5, 6, 8, 10, 11* | *Visa Fraud* | *Each count: Incarceration for not more than 25 years and/or $250,000 fine; 5 years supervised release; $100 special assessment* |

Date: February 12, 2003

AUSA: Kim R. Lindquist
Telephone No.: (208) 334-1211