David Z. Nevin
Scott McKay
Dean Arnold
NEVIN, BENJAMIN & McKAY LLP
P.O. Box 2772
303 West Bannock
Boise, Idaho 83701
telephone: (208) 343-1000
facsimile: (208) 345-8274

Attorneys for Defendant Sami Omar Al-Hussayen

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-03-048-C-EJL |
| Plaintiff, | ) ) | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT** |
| vs. | ) ) | |
| SAMI OMAR AL-HUSSAYEN, | ) ) | **(Omnibus)** |
| Defendant. | ) ) ) | |

Mr. Sami Omar Al-Hussayen was originally charged with seven counts of visa fraud and four counts of making false statements. *See* Indictment, filed Feb. 13, 2003 (Docket No. 1). Based upon this Indictment, we filed numerous pre-trial motions. On the eve of trial, with several of our pre-trial motions pending, the government filed a Superseding Indictment (hereinafter "SI") adding one count of conspiracy to provide material support to terrorists. *See* SI, filed Jan. 9, 2004 (Docket No. 378). Once again, we filed numerous pre-trial motions, many of which sought dismissal of the new count. Thereafter, in an attempt to artfully plead around fatal defects including constitutional infirmaties identified in our pretrial motions, the government on March 4, 2004, filed a Second Superseding Indictment (hereinafter "SSI") (Docket No. 486) which, among other matters, added

1 • MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Omnibus)

ORIGINAL

two additional counts – providing material support to terrorists (count two) and conspiracy to provide material support to a designated terrorist organization (count three).

The SSI remains defective and constitutionally infirm, notwithstanding the government's artful pleading. Thus, we have filed an omnibus motion to dismiss the various counts of the SSI, individually and collectively, on a variety of grounds. However, with the trial date only weeks away, the government has placed us, and for that matter the Court, in the position of having to rely to a large extent on the briefing previously submitted to the Court in connection with prior motions addressing the first two indictments. For us to proceed otherwise would be to proceed to the detriment of trial preparation.[1]  In short, the government has forced Mr. Al-Hussayen to choose between two constitutional rights – his right to a speedy trial and his right to a fair trial. *See United States v. Simmons*, 390 U.S. 377, 394 (1968). In this regard, we submit the following:

## 1. First Amendment to the United States Constitution

### a. *Counts Four through Fourteen*

Counts four through fourteen of the SSI are the same as counts one through eleven of the original Indictment. We previously filed a motion to dismiss these counts pursuant to the First Amendment (Docket No. 357) and rely on that briefing in connection with this omnibus motion to dismiss these counts on the basis of the First Amendment. The Court has not ruled on this motion.

### b. *Counts One through Three*

The activities alleged by the government in counts one, two, and three of the SSI are protected by the First Amendment and cannot be proscribed. The government previously admitted that it seeks to punish Mr. Al-Hussayen for actions resulting in the broadcast of speech over

---

[1] Thus, the Court established various scheduling and pretrial motion deadline in this case. These deadlines essentially have been rendered meaningless by the government's charging actions.

"websites and other internet media," which speech was "intended in part to recruit personnel and raise funds for violent jihad in such places as Chechnya and Israel." *See* SI, p. 14 ("The Purpose of the Conspiracy"). After exposing this constitutional defect, *see, e.g.,* Memo in Support of Motion to Dismiss Count One of the SI (First Amendment) (Docket No. 432), the government obtained its SSI which omits the above-referenced "purpose of the conspiracy." The government's theory, however, has not changed.

*i.    Mr. Al-Hussayen Is Being Punished for Speech, Not Conduct*

More specifically, the conduct at issue in counts one through three is conduct necessary to broadcast speech over the internet or within an email group. Indeed paragraph 1 of the SSI appearing under the heading "COUNTS 1 THROUGH 3: THE MATERIAL SUPPORT AND RESOURCES CHARGES" alleges that Mr. Al-Hussayen provided material support to terrorism by "creating and maintaining internet websites and other internet media designed to recruit mujahideen and raise funds for violent jihad in Israel, Chechnya and other places." Criminal liability may not be imposed upon those engaging in protected speech by punishing the acts resulting in this speech. Were this permissible the protections of the First Amendment would be meaningless.

These protections remain even if one broadcasts his views through group advocacy, *see Buckley v. Valeo*, 424 U.S. 1, 15 (1976), and even if other, unknown, third-parties are "inspired" into illegal action by it. *See NAACP v. Claiborne Hardware*, 458 U.S. 886, 907-12 (1982); *Planned Parenthood of the Columbia/Willamette Inc. v. American Coalition of Life Activists*, 244 F.3d 1007, 1015 (9th Cir. 2001). As the Supreme Court stated, the government cannot punish speech simply because it "whets the appetites of [those who have a tendency to commit such crimes] and encourages them to engage in illegal conduct." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002).

The government's allegations in the SSI concerning counts one through three are telling:

From at least on or about October 2, 1998, to on or about February 26, 2003, AL-HUSSAYEN provided extensive computer and internet-related services, advice, assistance and support to organizations and individuals, including the IANA, Dar Al-Asr and two prominent Saudi clerics. This included, but was not limited to *AL-HUSSAYEN's creation, registration, management, administration and maintenance of websites,* many of which contained materials designed and intended to recruit mujahideen and raise funds for violent jihad. Additionally, AL-HUSSAYEN and others, known and unknown to the Grand Jury, *published or broadcasted a wide variety of speeches, lectures and articles* justifying and glorifying violent jihad, as well as graphic videos depicting mujahideen and other subjects relating to violent jihad, *with the intent to inspire viewers* to engage in and provide financial support for violent jihad.

SSI, para. 12 (emphasis added). Thus, the government is expressly alleging that Mr. Al-Hussayen provided material support by assisting in the creation and maintenance of websites upon which "speeches, lectures and articles" were broadcast, with the intent that the content of the websites would "inspire" others into action. These acts are mere advocacy through speech – and as such, are protected by the First Amendment.[2]

With respect to the email group, the government seeks to punish Mr. Al-Hussayen not only for his speech, but for the speech of others. Count two is based upon three general allegations: 1) two websites associated with Mr. Al-Hussayen "invited viewers to sign up for an internet email group," 2) Mr. Al-Hussayen and others posted messages to the e-mail group, and 3) as one of many moderators, Mr. Al-Hussayen "had the ability and authority to accept, retain and delete messages [] posted to the group." SSI, pp. 9-10. The SSI does not allege that Mr. Al-Hussayen created this e-mail group; rather, it alleges that the group "was intended to permit members to post inquiries and information relating to violent jihad." *Id.* at 9. Accordingly, the government seeks to punish Mr.

---

[2] The government has previously stated that "it is irrelevant how Mr. Al-Hussayen procured individuals to support the § 956 Conspiracy. Mr. Al-Hussayen would have violated the statute by providing such personnel regardless of whether he paid them as mercenaries, *persuaded them with rhetoric, or induced them with the promise of eternal salvation.*" Opposition, p. 6 (Docket No. 482) (emphasis added). Certainly there is no allegation that Mr. Al-Hussayen paid anyone to commit such acts. The remaining conduct constitutes speech and the only analysis the Court need apply is whether this speech is protected.

Al-Hussayen for the *content of the speech* which either invited others to join the e-mail group, or that which was posted to this e-mail group by Mr. Al-Hussayen or others. This violates the First Amendment – as long as the speech is protected, the government cannot punish Mr. Al-Hussayen for engaging in such advocacy, let alone "inviting" others to join. *See Claiborne Hardware,* at 909-10.

Furthermore, with respect to count three, the government merely alleges that two websites associated with Mr. Al-Hussayen provided a "hyperlink" to palestine-info.org "for donations."[3] SSI, p. 8. There is no allegation that Mr. Al-Hussayen conspired to provide financial donations himself, or that he ever did so. Rather, the government alleges that two websites (which it contends are connected to Mr. Al-Hussayen) allowed access to another website and that this other website was somehow intended to facilitate monetary donations on behalf of the Islamic Resistance Movement (HAMAS). Even if the government could connect these "hyperlinks" to Mr. Al-Hussayen, the First Amendment would prevent it from punishing him for the same.

The written word as it appears on a website is speech, not conduct. At most, such "hyperlinks," even if supported by text encouraging their use, constitute nothing more than protected advocacy. This is true even if Mr. Al-Hussayen had read and understood the content of the e-mail identified in paragraph 18 of the SSI, or even if he had known that HAMAS had been "designated." Let us not forget, advocacy, even of illegal action, is protected by the First Amendment. *See, e.g., Brandenburg v. Ohio,* 395 U.S. 444, 447-49 (1969) (per curiam).

Furthermore, the government confuses the act of expressive conduct with encouraging others to engage in expressive conduct. *See* Government's Memorandum in Opposition to

---

[3] Based upon the government's allegations, www.palestine-info.org was apparently allowed to operate for at least two years while facilitating monetary donations to the Islamic Resistance Movement, and remains in existence to this day. There is no allegation that Mr. Al-Hussayen had any involvement in creating, registering, managing, administrating, or maintaining this website.

Defendant's Motion to Dismiss Count One of the SI (First Amendment), pp. 4-5 (Opposition) (Docket No. 482).  According to the government, encouraging others through words to make financial contributions is expressive conduct, and therefore, only "receives *some* First Amendment protection." *Id.* at 4 (emphasis in original).  This, of course, is incorrect.  "Expressive conduct," in the First Amendment context, consists of acts in which the person expresses views through conduct rather than through the written or spoken word.  Examples of expressive conduct are burning selective service registration certificates (draft cards), *United States v. O'Brien*, 391 U.S. 367 (1968) (not protected), hanging the American flag upside down with a "peace" symbol affixed, *Spence v. State of Washington*, 418 U.S. 405 (1974) (protected), or burning the American flag.  *Texas v. Johnson*, 491 U.S. 397 (1989) (protected).

Regardless of whether the Court found such expressive conduct to be protected, it would never have concluded that *advocating for others to perform these very same acts* was not protected speech under the First Amendment.  For example, in *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1134-35 (9th Cir. 2000) *(HLP II)*, the case relied upon by the government, the Ninth Circuit was addressing the "expressive component" of making political donations to designated terrorist organizations, and clearly distinguished that from *pure speech.*[4]  In fact, we are all free to create,

---

[4] In its Opposition, the government wrongly contends that we have mis-characterized this portion of *HLP II*, and in doing so, the government itself misstates the holding of the case.  In *HLP II*, the plaintiffs, *wanting to make financial contributions themselves*, argued that "providing money to organizations engaged in political expression is itself both political expression and association."  205 F.3d at 1134.  The court rejected this argument, finding that "the First Amendment protects the expressive component of seeking and donating funds, [while] *expressive conduct* receives significantly less protection than *pure speech.*" *Id.* at 1134-35 (emphasis added).  Accordingly, the court found that the government could "regulate financial *contributions* to organizations performing unlawful or harmful activities." *Id.* at 1135 (emphasis added).  Thus, *HLP II* expressly distinguished between making financial donations, as oppose to advocating for or encouraging others to do so.  *See id.* ("this interest is unrelated to suppressing free expression because it restricts the actions of those who wish to give material support to the groups, not the expression of those who advocate or believe the ideas that the groups support").  Our statement of the law is entirely consistent with *HLP II*.  We

6  •   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Omnibus)

register, manage, administer, and maintain websites which *advocate* the burning of selective service cards, hanging the American flag upside down, or even burning it, as such consists of *pure speech* and has nothing to do with whether the expressive conduct is protected. Accordingly, we can all create websites that encourage others to donate money to designated terrorist organizations – we simply are prohibited from actually donating money ourselves. *See HLP II*, 205 F.3d at 1134-35. As the Supreme Court stated in *Johnson*, "the government generally has a freer hand in restricting expressive conduct than it has in restricting the *written or spoken word.*" 491 U.S. at 406 (emphasis added).

> ii.   *The Government Cannot Punish Mr. Al-Hussayen for the Very Conduct Which Is Necessary to Participate in Protected Speech*

In sum, the government's theory is wrong. Mr. Al-Hussayen is not being tried for his conduct; he is being tried for participating in group advocacy. "There are, of course, some activities, legal if engaged by one, yet illegal if performed in concert with others, but political expression is not one of them." *Claiborne Hardware*, 458 U.S. at 908 (quoting *Citizens Against Rent Control*, 454 U.S. at 296). According to the government, however, because it requires money (currency, etc.) and certain knowledge (expert advice or assistance) to broadcast speech on websites and other internet media (communications equipment), and viewers of that same message may be persuaded by it (personnel), the government can criminalize the very acts necessary to create the media and publish the message even if the message itself is protected by the First Amendment. Were the government's theory

---

did not address, or even imply, whether there is a First Amendment right to make donations, *i.e.,* in the form of expressive conduct, to a designated terrorist organization. However, there is a First Amendment right to advocate or encourage, *i.e.,* in the form of pure speech, others to make financial donations to anyone, including terrorists or terrorist organizations. *Id.* at 1134-35. Accordingly, we reject the government's statement that *HLP II* held that "encouraging others to make, financial contributions to terrorist organizations is criminally proscribed, not constitutionally protected." That is not the holding of *HLP II;* rather, the court clearly stated that pure speech, *e.g.,* encouraging others to donate money, is afforded the full protections of the First Amendment. *See HLP II*, 205 F.3d at 1134-35. Accordingly, the government is guilty of the very conduct of which it complained.

permissible, it would effectively eliminate all protections afforded by the First Amendment, as we would all enjoy, for example, a First Amendment right to stand on a street corner holding a sign which encourages others (personnel) to support Muslims fighting in Chechnya or Palestine, but the government could imprison us for buying (currency, etc.) the materials that were necessary to make (expert advice or assistance) the sign (communications equipment). In this way, the government avoids the question whether the statement on the sign is protected by the First Amendment, because it claims that we are not being punished for *what the sign says*, but for the acts of *making and holding the sign*. This facile argument is incorrect and should be rejected.

The government is attempting to punish Mr. Al-Hussayen not for proscribed conduct, or even expressive conduct, but for *pure speech*. The question is not whether speech involves conduct – it does. The question is whether the speech alleged is protected by the First Amendment. As shown in memoranda, it most certainly is.[5] Counts one, two and three must be dismissed.

### 2. **Vagueness**

#### a. *Counts Four through Fourteen*

In light of the SSI and for purposes of the record, we have moved to dismiss counts four through fourteen on the grounds that the statutes underlying these counts are void for vagueness and overbroad, on their face and as applied, pursuant to the freedom of speech, free exercise of religion, and freedom of association clauses of the First Amendment to the United States Constitution; and pursuant to the Due Process Clause of the Fifth Amendments to the United States Constitution. In doing so we rely, on our prior motion and memoranda (Docket Nos. 207, 208 and 303) and recognize that the Court has previously denied this motion (Docket No. 337) at least

---

[5] *See* Memorandum in Support of Defendant's Motion to Dismiss Count One of the SI (First Amendment) (Docket No. 432), filed on Feb. 17, 2004.

insofar as the counts premised on the Immigration Form I-20 are concerned.

b. *Counts One through Three*

In previous briefing we argued that Count One of the SI should be dismissed because the definition of material support in section 2339A(b) is vague and overbroad. Memo in Support of Motion to Dismiss Count One of the SI (Vagueness) (Docket No. 436), filed February 17, 2004.  In particular, we argued that the terms "provide," "currency," "financial services," "communications equipment," "personnel," "monetary instruments," and "expert advice and assistance," do not sufficiently identify the conduct which is intended to be prohibited such that persons of common intelligence must guess at their meaning.  We noted that the Ninth Circuit has twice found the terms "personnel" and "training" to be vague, and federal District Courts in California and New York have declared the terms "expert advice and assistance," and "communications equipment" to be vague.  We argued that this vagueness permits these terms, as in the present case, to be enlisted in an effort to criminalize behavior which is protected by the First Amendment.

We argued that as a result of their vagueness these terms also encouraged arbitrary and discriminatory law enforcement – we noted that the United States Attorney for the District of Idaho had admitted as much in his interview with the Washington Post the day after the SI was filed, declaring that he and other Justice Department officials were aware of the "unique nature of the case" but believed that the charges "will withstand constitutional muster."

Finally, we argued that the prohibitions were also impermissibly overbroad, for they proscribe a substantial amount of protected First Amendment activity, including a wide variety of pure speech, without regard to whether it is intended or likely to produce imminent illegal activity. *Brandenburg v. Ohio*, 395 U.S. 444, 448-49 (1969).

The arguments articulated in Docket No. 436 are incorporated here by reference as if fully

set forth. Presumably in an effort to defeat this and other arguments articulated in support of pretrial motions previously filed, the government obtained its SSI, which changes the wording of certain counts, and adds two new counts. The allegations in Count One of the SI, however, are essentially identical for purposes of the present motion to those of Count One of the SSI. In particular, Count One alleges the provision of the same items of "material support" in the SSI as in the SI. Furthermore, Count One of the SSI remains premised upon pure speech, the exercise of religion, and the exercise of the right of free association, all of which are protected by the First Amendment. Therefore, for the same reasons articulated in Docket No. 436, the Court should dismiss Count One of the SSI.

For these same reasons, Count Two of the SSI must also be dismissed. Count Two appears essentially to be an allegation of the completed offense which is alleged as the object of the conspiracy in Count One. Thus all of the arguments respecting vagueness articulated with respect to Count One also apply to Count Two.

Finally, Count Three also alleges the provision of items of material support, that is, currency, monetary instruments, financial services, and communications equipment, which were analyzed in Docket No. 436. These arguments apply directly to the items of material support described in Count Three. Count Three of course alleges a conspiracy to violate section 2339B, as opposed to the conspiracy to violate section 2339A in Count One, and the completed offense of a violation of 2339A in Count Two. But as we have noted above, the vagueness of the definition of "material support" applies equally to these two sections, since both rely on the definition in section 2339A(b).

Furthermore, the facts apparently underlying Count Three suffer from the same infirmities as those underlying Counts One and Two. Count Three specifically incorporates the allegations of paragraphs 16 through 18 of the SSI. Paragraph 17 alleges that islamway.com, "a website AL-

10  •  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Omnibus)

HUSSAYEN helped create, operate, and maintain," contained "a page," which "included a section titled with the question, 'What is your role?'", and which allegedly answered that question by stating "[p]articipate with money" and then referred to "The Palestinian Information Center (the official mouthpiece of ... HAMAS), which opens the door of donations for all Muslims to assist their brothers in their honorable jihad against the dictatorial Zionist Jewish enemy." Another website which Mr. Al-Hussayen allegedly "helped create, operate, and maintain," al-multaqa.com, also "provided hyperlinks" to the same site.

It is worth noting that paragraph 17 does not allege that Mr. Al-Hussayen placed the links on either website, or that others did so with his approval. And simply providing a link to another website (as in the allegation regarding al-multaqa.com) cannot, as a matter of law, constitute the provision of "material support." Finally, assuming the language allegedly appearing on islamway.com constitutes advocacy or encouragement for others to make donations to HAMAS, that, as we note elsewhere in these materials, is activity protected by the First Amendment. To the extent that section 2339B purports to criminalize such activity it is vague and overbroad.

In partial response to Docket No. 436 the government made the far fetched and legally unsupported argument that a statute which is found to be *facially invalid and unconstitutionally vague* can somehow survive an *as applied* analysis. *See* Government's Memo in Opposition to Motion to Dismiss Count One of the SI (First Amendment), pp. 6 (Docket No. 482). This of course is false.

Nor is there a distinction between the definition of material support and resources under § 2339A and § 2339B as argued by the government in response to our motion to dismiss count one. The definition of material support or resources is contained within 2339A(b), and is applied to *both* § 2339A and § 2339B. Furthermore, because the terms "personnel" and "expert advice or assistance" have been found to be *facially vague* when used to prohibit activities in support of a single act, *i.e.,*

providing material support to a designated terrorist organization (§ 2339B), *a fortiori*, those same terms must be unconstitutionally vague when used to prohibit activities which could possibly violate any one of the thirty-five different offenses enumerated within § 2339A.

As the government has asserted:

> For purposes of the statute [18 U.S.C. § 2339A], it is *irrelevant* how Mr. Al-Hussayen procured individuals to support the § 956 Conspiracy. Mr. Al-Hussayen would have violated the statute by providing such personnel regardless of whether he paid them as mercenaries, *persuaded them with rhetoric, or induced them with the promise of eternal salvation.*

Opposition, p. 6 (emphasis added).  Not only does this constitute an admission that the government is seeking to punish Mr. Al-Hussayen for his speech, *see* note 2, *supra*, it compels a finding that the statute is impermissibly vague as it fails to provide a person of ordinary intelligence fair notice that such activity would expose them to criminal liability.  In fact, there is nothing in either § 2339A or § 2339B which even implies that one could be held liable for the actions of others who reacted to such "rhetoric" or "promises."

Counts one, two and three are unconstitutionally vague and must be dismissed.

### 3. Multi-Level Inchoate Offense

Counts one and two impermissibly charge Mr. Al-Hussayen with a multi-level inchoate offense in violation of the Fifth Amendment to the United States Constitution and must be dismissed.  In support of this, we rely on and incorporate by reference our previously filed memorandum discussing this issue in detail.[6]

Count One, its structural and stylistic changes notwithstanding, remains a triple inchoate offense: a conspiracy (in violation of 18 U.S.C. §371) to prepare another conspiracy(to violate 18

---

[6] Memorandum in Support of Motion to Dismiss Count One of the SI (Multi-Level Inchoate Offense) (Docket No. 438), filed on Feb. 17, 2004.

U.S.C. §956). That level of inchoate criminal liability is as improper as it is unprecedented.

While Count Two charges a substantive violation of §2339A, it merely removes one level, but still charges a double inchoate offense: to prepare for the commission of a §956 conspiracy. See SSI, at ¶ 29 ("knowing and intending that they were to be used in preparation for and in carrying out a violation of [§956]"). The "preparation" aspect of the charge sounds in the law of attempts, and introduces a level of inchoate criminal responsibility that is simply too far removed from an accurate determination of an actor's intent. As Professor Robbins explained in his article, Double Inchoate Crimes, 26 HARV.J. ON LEGIS. 1, (Winter 1989) (hereinafter "Robbins"), the practice of pyramiding inchoate offenses "would impart criminal liability to acts so removed from the ultimate offense as to qualify as mere preparation – that is, acts to which a court cannot impute a fully formed intent." Robbins, at 65 (footnote omitted). As such, Count Two constitutes, in effect, an "attempt to conspire," or "attempted conspiracy," either of which, as the Second Circuit pointed out in *United States v. Yu-Leung*, 51 F.3d 1116, 1122 n. 3 (2d Cir. 1995), is "a creature unknown in federal criminal law." See also Robbins, at 15 ns. 271 & 272.

Accordingly, since counts one and two impermissibly charge multi-level inchoate offenses, they must be dismissed.

### 4. Failure to Allege an Offense

#### a. *"Provide" Material Support or Resources*

The SSI fails to allege an offense with respect to counts one, two and three as the government's allegations do no constitute a violation of § 2339A and § 2339B as a matter of law. For the reasons set forth in our previously filed Memorandum (Failure to Allege an Offense – Conspiracy to "Provide" Material Support) (Docket No. 428), Mr. Al-Hussayen is not alleged to have engage in any activities which violate § 2339A. Thus, the government has failed to allege an

offense as to counts one and two.  Count three also suffers from the same insufficiencies – if there is ever to be a donation, it will be made by some unknown third-party.

Despite the government's contention that one can "provide" material support by persuading others into action with "rhetoric" or "promises of eternal salvation," see Government's Memo in Opposition to Motion to Dismiss Count One of the S1 (First Amendment), p. 6 (Docket No. 482), neither § 2339A nor § 2339B impose criminal liability in this manner.  In fact, the Supreme Court has held that such speech is protected by the First Amendment.  *See, e.g., Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam); see also Defendant's Motion to Dismiss Count One of the S1 (First Amendment) (Docket No. 432)

The government's conclusion in its Opposition acknowledges that our description of its theory is accurate.  There, the government stated: "Defendant's agreement with others to provide money, expertise and other forms of material support or resources to create websites, coupled with the intent that they [the websites] would be used for recruitment and fundraising by the 956 Conspiracy, sufficiently alleges the violation charged in Count One."  Opposition, p. 6 (Docket No. 427).  In essence, the government alleges that Mr. Al-Hussayen agreed to (Count One) and did (Count Two) use resources to create the websites, and that it was the websites which were to be used by the § 956 conspirators.  Accordingly, all activities which occurred in creating the websites does not violate § 2339A.  *See United States v. Sattar*, 272 F.Supp.2d 348, 358 (S.D.N.Y. 2003).

The only remaining question is whether the websites and e-mail group constitute "communications equipment."  The government has changed its position and now claims that Mr. Al-Hussayen provided the computer servers upon which the websites operated.  However, the posting of articles to a website does not "provide" servers to the 956 conspirators – it merely allows those who wish to view the contents of the websites to do so through the use of communications

14  •  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Omnibus)

equipment which they already have access to. *Id.* Of course, the same is true for the email group.

This reasoning applies to count three as well. Mr. Al-Hussayen is not alleged to have conspired to donate money to the Islamic Resistance Movement, nor is he alleged to have actually done so. Furthermore, Mr. Al-Hussayen, is not alleged to have created the www.palestine-info.org website, nor is he alleged to have paid for its operation. Rather, the government seeks to impose criminal liability based upon a "hyperlink" to this site. However, any such donations would have been made by unknown third parties. As shown above, such is not prohibited by the statute.

Accordingly, the government's allegations do not constitute a violation of either § 2339A or § 2339B as a matter of law. In this regard, we rely on and incorporate by reference our prior memoranda filed with the Court in that Mr. Al-Hussayen is not alleged to have conspired to actually "provide" material support or resources (Docket No. 428);

b. *Combatant Immunity*

As noted above, counts one, two and three charge Mr. Al-Hussayen with criminal offenses for "creating and maintaining internet websites and other internet media designed to recruit mujahideen and raise funds for violent jihad in Israel, Chechnya and other places." SSI, para. 1. The prosecution of Mr. Al-Hussayen pursuant to 18 U.S.C. § 2339A fails to state an offense pursuant to the doctrine of combatant immunity and principles of U.S. and International Humanitarian Law as set forth in detail in our prior memoranda (Docket No. 426) . The exact principles we analyzed with respect to count one of the SI and combatant immunity are applicable to counts one and two of the SSI as these offenses are both premised on § 2339A and a conspiracy under § 956 to engage in "violent jihad" involving "armed conflicts" in Chechnya and Israel among other places and historically involving "murder, maiming, kidnaping, and destruction of property." SSI, para. 3.a. As set forth in our memorandum, members of such a § 956 conspiracy are entitled to

combat immunity, and therefore, could not commit murder, kidnaping, maiming, or injury to property in violation of the predicate offense during the course of combat operations. Thus, counts one and two must be dismissed pursuant to the doctrine of combatant immunity and principles of U.S. and International Humanitarian Law.

### c. *Failure to Charge a Conspiracy Under 18 U.S.C. § 956*

Counts one and two are predicated on a § 956 conspiracy. As we stated in our earlier motion and supporting memorandum, the government failed to allege the elements necessary to establish such a conspiracy in the SI. (Docket Nos. 429-430). The same is true with respect to counts one and two of the SSI as neither count alleges any of the elements associated with such a conspiracy. Accordingly and for the reasons set forth in our earlier memorandum, these counts must be dismissed.

### d. *First Amendment; Religious Materials Exception; and Provider Immunity*

As set forth in detail above and in our earlier filed memoranda (Docket Nos. 430 and 432), the government seeks criminal sanctions for exercising rights protected under the First Amendment to the United States Constitution. Additionally, the SSI continues to allege that the material support or resources alleged to have been provided consist of religious materials pursuant to 18 U.S.C. § 2339(A)(b). (*See* Docket No. 430). Finally, the prosecution of Mr. Al-Hussayen for the crimes alleged in counts one, two and three is inconsistent with 47 U.S.C. § 230 which provides federal immunity for users and providers of interactive computer services. (Docket No. 430). Thus for the reasons fully analyzed in our prior memorandum, these counts must be dismissed.

## 5. **Multiplicity**

Counts four, seven, ten and twelve of the SSI are multiplicitous with counts five, eight, eleven and thirteen and must be dismissed pursuant to the Fifth Amendment to the United States

Constitution. In support of this argument we rely on and incorporate by reference our prior memoranda (Docket Nos. 217 and 349) filed in support of this argument in connection with the first Indictment and addressing the identical corresponding counts. The Court has not ruled on the prior multiplicity motions (Docket Nos. 216 and 348).

## 6. Misconduct Before Grand Jury

Misconduct before the grand jury in connection with the original Indictment (Docket No. 1), resulted in the arrest of Mr. Al-Hussayen and the instant, protracted prosecution of Mr. Al-Hussayen. The Court should dismiss the SSI as a result of this misconduct. In support of this argument, we rely on the prior memoranda and pleadings including affidavits and exhibits submitted in connection with this misconduct (Docket Nos. 212, 213 and 308) and the entirety of the record on file herein. The Court has not ruled on the motion concerning this matter filed in connection with the original Indictment (Docket No. 211).

## 7. Pre-Indictment Delay

The government's excessive delay in filing the SSI warrants dismissal particularly with respect to counts one, two and three. The ongoing delay violates Mr. Al-Hussayen's due process rights under the Fifth Amendment as well as the Speedy Trial Act. The tactics used by the government also compel dismissal pursuant to Federal Rule of Criminal Procedure 48(b). In support of this motion, we rely on and incorporate by reference our previously filed memorandum on this issue (Docket No. 442) and the entirety of the record on file herein. The same issues identified in this prior memorandum are at issue with respect to the SSI and even more compelling given this latest Indictment brought over a year after Mr. Al-Hussayen's arrest.

## 8. Selective Prosecution

The Supreme Court articulated the underlying premises of selective prosecution claims more

than one hundred years ago. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Court dealt with a San Francisco ordinance requiring permission of the Board of Supervisors to operate a laundry in a building not made of brick or stone. Although the law itself was proper, it was enforced almost exclusively against Chinese laundry operators. The Court held that

> [t]hough the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

*Id.* at 373-74. On claims of selective prosecution, defendants are obligated to show that other persons similarly situated are not being prosecuted[7], and that the prosecution is based on an impermissible motive. *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996).

Here, the government is attempting to impose criminal liability upon Mr. Al-Hussayen, a citizen of Saudi Arabia and devout Muslim, under its "terrorism" statutes on the basis that he advocated on behalf of Muslims engaged in violent conflict in places such as Chechnya and Palestine.[8] The charges of "providing" material support are based upon speech broadcast over "websites and other internet media," *see* SSI, p. 5, as well as Mr. Al-Hussayen's alleged status as a "moderator" of an internet email group. *Id.* at 9. With respect to the email group, the government admits that Mr. Al-Hussayen is not the only person who is a "moderator" of the internet email group, *see* SSI, p. 9 ("an internet e-mail group, maintained and moderated by Al-Hussayen *and others*") yet he is the only one being prosecuted for the words of others which were published therein.

---

[7] The government has refused to provide discovery concerning others similarly situated (*see* Defendant's Fifth Motion to Compel, Request 2.G. (Docket No. 419)) and at a hearing in open court on March 9, 2004, the Court upheld the government's refusal to provide discovery on this request and the various other request identified in this Fifth Motion to Compel Discovery.

[8] As we have indicated previously, such advocacy is protected by the First Amendment.

18 • MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Omnibus)

There are numerous other individuals who are advocating on behalf of those who are engaged in violent religious conflicts, but these same individuals are not being prosecuted. For example, a variety of websites including websites based in the United States support the struggle of the Irish Republican Army and Sinn Fein on behalf of Catholics in Northern Ireland. With respect to Israel/Palestine, one need look no further then the website of the Jewish Defense League (www.jdl.org) based in Los Angeles for the self proclaimed "most controversial" of websites addressing among other matters Palestinian situation from the Jewish perspective. Yet none of the individuals are being prosecuted. Had Mr. Al-Hussayen been Catholic or Jewish and affiliated with such "other websites" he would not be prosecuted. In fact, even if Mr. Al-Hussayen has been a Christian residing in the United States and utilizing the internet as a means of calling for support of the Chechens, he would not have been prosecuted as countless internet articles attest. Of course, Mr. Al-Hussayen is an Arab and a Muslim, and as a result, a defendant in the present case.

There are presumably hundreds, if not thousands of people in the United States who are participating in similar activities on a daily basis, yet Mr. Al-Hussayen – who just happens to fall into the "profile" or "category" of persons which the current administration likes to attach suspicion to, *e.g.*, Muslims from Saudi Arabia[9] – is the only one being prosecuted. Indeed, the chilling words of Attorney General John Ashcroft spoken after September 11, 2001, promising to pursue terrorist suspects for anything including "spitting on the sidewalk" s are ringing true - as he stated:

> If you overstay your visas even by one day, we will arrest you: if you violate a local law, we will hope that you will, and work to make sure that you are put in jail and be

---

[9] *See* Declaration of Michael Gneckow, Exhibit 1 to government's response to motion to suppress and for *Franks* hearing, para. 23 (Docket No. 314) (asserting that Mr. Al-Hussayen's uncle, Saleh Al-Hussayen, "is from Saudi Arabia" was a relevant factor in the government's investigation).

19 • MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Omnibus)

kept in custody as long as possible.[10]

Mr. Al-Hussayen has been singled out because of his religion and national origin to become the only person to be prosecuted on the theories advanced in counts one, two, and three of the SSI, when in fact, there are numerous other individuals and groups advocating in the same fashion for other religious-based causes.  For these reasons, these counts should be dismissed for selective prosecution.

The same is true with respect to the immigration based offenses, counts four through fourteen.  In fact, the government has candidly acknowledged that Mr. Al-Hussayen is the first person to be criminally prosecuted based upon the certification at issue in the Immigration Form I-20.  For the reasons set forth herein and in our prior memoranda seeking dismissal of these counts for selection prosecution (Docket Nos. 229 and 304), counts four through fourteen should be dismissed.[11]

Based upon the foregoing, as well as the reasoning contained within our previously filed memoranda which have been incorporated by reference, the Motion should be granted.

DATED this __12__ day of March, 2004.

NEVIN, BENJAMIN & McKAY LLP


_____
Scott McKay

---

[10] See "Ashcroft Discuss Enthusiastic Plans for Using New Powers Against Terror Suspects" by Karen Gullo, Associated Press, October 25, 2001 (10/25/01 APWIRES 20:4900); also www.usdoj.gov/ag/speeches/2001/agcrisisremarks10-25.htm (reflecting the text of Mr. Ashcroft's prepared remarks including his promise that the policy of the Department of Justice in such matters will be to "use every available statute" and "seek every prosecutorial advantage.")

[11] The court has not ruled on this previously filed motion.

20  •  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Omnibus)

CERTIFICATE OF SERVICE

I HEREBY CERTIFY That on this 12 day of March, 2004, I caused a true and correct copy of the foregoing document to be:

X  mailed

X  faxed

_____  hand delivered

to:

Kim Lindquist
Terry Derden
United States Attorney's Office
P.O. Box 32
Boise, ID  83707

_____
Scott McKay