David Z. Nevin (ISB#2280)
Scott McKay (ISB#4309)
NEVIN, BENJAMIN, McKAY & BARTLETT LLP
P.O. Box 2772
303 West Bannock
Boise, Idaho 83701
telephone: (208) 343-1000
facsimile: (208) 345-8274

Attorneys for Defendant Sami Omar Al-Hussayen

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SAMI OMAR AL-HUSSAYEN,<br><br>Defendant.<br>______________________________<br><br>ABDULLAH AL-KIDD,<br><br>Plaintiff,<br><br>vs.<br><br>ALBERTO GONZALES, Attorney General of the United States; et al.,<br><br>Defendants.<br>______________________________ | Case No. CR-03-048-C-EJL<br>Case No. 1:05-093-EJL<br><br>**SAMI OMAR AL-HUSSAYEN'S MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO DISCLOSE SPECIFIC GRAND JURY MATERIALS** |

**1. Introduction and Summary of Argument**

Beginning in approximately 2002, Sami Omar Al-Hussayen became the subject of extensive grand jury activity in the District of Idaho. At the time, Mr. Al-Hussayen was a graduate student at the University of Idaho in Moscow, Idaho, where he was maintaining a 3.8 grade point average while pursuing a Ph.D. in Computer Science. Mr. Al-Hussayen, a leader in the Muslim community in Moscow, resided in married student housing with his wife and three small children, and enjoyed the respect and admiration of University faculty, administration, and staff, and a wide circle of friends and associates. In the scorched-earth investigation which followed, the most extensive in the District's history, almost every aspect of Mr. Al-Hussayen's private life was subjected to scrutiny. Agents followed Mr. Al-Hussayen to his home, to religious services, and on family vacations. The grand jury was made privy to his financial, academic and personal records, and to the contents of some 30,000 phone calls and emails which were intercepted by the government.

Mr. Al-Hussayen was charged by Indictment with various immigration offenses and arrested. Following his arrest and indictment, the government continued to utilize the grand jury and obtained two superseding indictments which added several terrorism related charges.

In June of 2004, however, when the government's theories were put to the test in an eight week trial, Mr. Al-Hussayen was acquitted of all terrorism charges and three of the immigration offenses. The jury deadlocked on the remaining immigration offenses and the government ultimately dismissed these charges, upon the condition, among others, that Mr. Al-Hussayen and his lawyers destroy or return all materials provided in discovery which had not

been marked as trial exhibits. Since his acquittal, Mr. Al-Hussayen has returned to his home in Saudi Arabia where he lives with wife and (now) four children.

On June 11, 2007, three years almost to the day after Mr. Al-Hussayen's acquittal, the government filed the present motion seeking again to advance its own interests at the expense of Mr. Al-Hussayen's privacy. Its Motion to Disclose Specific Grand Jury Materials (hereafter Motion), Docket No. 691, seeks permission to disclose portions of the grand jury materials from these proceedings. In essence, this motion now proposes that the government, despite insisting that Mr. Al-Hussayen not retain possession of the vast majority of this material himself, be permitted to disseminate portions of it to a third party. The government makes this motion simply to advance its own interests, on the theory that these materials are necessary to respond to discovery requests generated in a separate civil proceeding in which Mr. Al-Hussayen is not a party, *Abdullah al-Kidd v. Alberto Gonzales, et al.,* United States District Court for District of Idaho Case No. 1:05-093-EJL.

Specifically, the government seeks disclosure of three categories of documents: "business records concerning financial transactions, any summaries of these records, and memoranda of interviews that occurred outside the grand jury." Motion at p. 1. These categories are narrowed later in the Motion:

> (1) all business records pertaining to financial transactions of Abdullah al-Kidd or his spouse, including any certifications of those records by financial institutions; (2) all government-prepared summaries or analyses of business records pertaining to financial transactions of Abdullah al-Kidd or his spouse that do not contain references to grand jury testimony; and (3) all government-prepared memoranda of interviews of individuals that do not contain references to grand jury testimony.

Motion, pp. 4 and 10-11. It is important to note that the Motion is apparently not accompanied by an *in camera* production of the actual materials proposed for disclosure. That is, the Motion proceeds in the abstract, and asks the Court for *carte blanche* authority not only to reveal categories of information, but also to decide what specific documents fit within these categories.

Mr. Al-Hussayen objects to the disclosure of any of these materials. They are required to remain secret by F.R.Cr.P. 6(e), which is intended to protect not only the integrity of the grand jury process, but also individuals like Mr. Al-Hussayen who have been exonerated and wish to carry on their lives without needless intrusion into the intimate details of their private affairs. The first two categories of information can be obtained from and/or recreated from independent sources. The third is unjustifiably broad. As to none of these three categories has the government made a showing which warrants their disclosure, particularly insofar as they specifically relate or refer to Mr. Al-Hussayen.

**2. Argument**

***a. The materials sought are covered by Rule 6(e)***

Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 426 (1983). This rule prohibits certain persons from disclosing "a matter occurring before the grand jury." F.R.C.P. 6(e)(2)(B). Both Congress and the United States Supreme Court have consistently stood ready to defend the grand jury against unwarranted intrusion. *Sells,* 463 U.S. at 425. Therefore, in the absence of a clear indication in a statute or rule, courts must always be

reluctant to conclude that a breach of grand jury secrecy has been authorized. *Id.*

The only exception argued by the government here is that provided for at F.R.Cr.P. 6(e)(3)(E)(i), for disclosure "preliminarily to or in connection with a judicial proceeding." In considering whether to disclose material pursuant to this rule, Courts must take into account several distinct interests served by safeguarding the confidentiality of grand jury proceedings. *Sells,* 463 U.S. at 424. Most significantly in this case, by preserving secrecy, courts assure that persons who are accused but exonerated will not be exposed to public ridicule. *Id.; Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-219 (1979). Grand jury secrecy is as important for the protection of the innocent as for the pursuit of the guilty. *Sells,* 463 U.S. at 424. Even after the conclusion of a particular grand jury's investigation, continued secrecy protects the reputations of the innocent and safeguards witnesses from possible retaliation. *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 567 n.11 (1983); *United States v. Fischbach and Moore, Inc.*, 776 F.2d 839, 844 (9th Cir. 1985). A person who has been acquitted has an *increased* interest in non-disclosure of grand jury materials. *Id.* When government attorneys seek grand jury information for use in related civil proceedings, courts must also be alert to the likelihood that disclosure will increase the risk of inadvertent or illegal further release of the information to unauthorized persons, that the integrity of the grand jury process itself can be compromised, and of possible subversion of the limits otherwise placed on the government's investigative and discovery powers in the civil context. *United States. v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir. 1993)

The government contends that the materials it wishes to disclose were not matters

"occurring before the grand jury," and thus are not subject to Rule 6(e). In this it refers to an important Ninth Circuit opinion which actually cuts against its position.

In *United States v. Dynavac, Inc.,* 6 F.3d 1407 (9th Cir. 1993), *see* Motion at pp. 4-6, 10, the Internal Revenue Service sought production by summons of materials which had been previously produced to a grand jury. The respondents resisted the summons on the ground that by being produced to the grand jury the materials became "a matter occurring before the grand jury," which F.R.Cr.P. 6(e) prevented their turning over.

The Ninth Circuit conducted an extensive analysis of the various approaches to this question taken by other circuits, which it concluded without a clear statement of which it would follow. 6 F. 3d at 1412-14. In deciding that the records could be produced, the Court was persuaded by three considerations:

> Here, the business records of Dynavac predated the grand jury investigation. * * * Further, the IRS has a legitimate interest in the documents as part of its authority to assess civil tax liabilities, see, 26 U.S.C. §§ 7601-7602 (West 1989); and *the records were subpoenaed directly from respondents, without mention of the grand jury*. *See Dresser* [*SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C.Cir.) (en banc), *cert. denied*, 449 U.S. 993 (1980)], 628 F.2d at 1382-83. We are therefore satisfied that the integrity of the grand jury's deliberative process would not be compromised by their disclosure.

6 F.3d at 1414 (emphasis added). The present discussion assumes that the records of Mr. al-Kidd predated the grand jury investigation (although the government summaries of the records most certainly did not). However, in *Dynavac* and *Dresser*, as in *Alexander v. F.B.I.,* 186 F.R.D. 102 (D.D.C. 1998) and *McArthur v. Robinson*, 98 F.R.D. 672 (D.Ark. 1983), *see* Motion at p. 6, the records were sought from the parties who originally produced them – not, as here, directly from the records of the grand jury itself. Courts are understandably reluctant to

permit a party to make documents unavailable in civil proceedings by the simple expedient of providing them to a grand jury, but that concern is not implicated in the present case.

The government also relies on *Church of Scientology Intern. v. U.S. Dept. of Justice*, 30 F.3d 224 (1st Cir. 1994), *see* Motion at p. 4, a Freedom of Information Act case in which the Plaintiff church made a FOIA request to the Department of Justice for information held by the United States Attorney's Office in Boston. The information sought related to a scheme to defraud the church which had been investigated by the F.B.I. The government refused to produce grand jury materials in reliance on FOIA Exemption 3, 5 U.S.C. § 552(b)(3), which allows the withholding of materials "specifically exempted from disclosure by statute... ." The non-produced materials were cryptically described in a "Vaughn Index," a FOIA privilege log described more fully in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973).

The thrust of the Court's opinion was that the Vaughn Index contained inadequate description for the Circuit to conduct its *de novo* review of the District Court's Order that the materials were indeed covered by Rule 6(e). Indeed, apparently all that could be said about most of the materials was that they were located in a file in the United States Attorney's office which had been marked "Grand Jury" – without any indication of what this label implied about the contents of the material inside. In dicta, the Court indicated that "[i]t cannot be that exposure to the grand jury immunizes information from future disclosure, regardless of its impact on the interest underlying Rule 6(e)." 30 F.3d at 236. Generally speaking, however, it was willing to permit the government to withhold any document, including business records created independently of the grand jury investigation, that were actually marked with an exhibit

sticker as grand jury exhibits. Otherwise, such materials were to be produced unless they "impermissibly would reveal the inner workings of the grand jury." *Id.*

*Church of Scientology* provides almost no useful guidance for the present situation. As a non-Ninth Circuit case it is not binding on the Court, and since it did not actually rule on whether any specific documents should or should not be disclosed, its articulation of the general rule was dicta.

The government also relies on *Senate of the Com. of Puerto Rico on Behalf of Judiciary Committee v. U.S. Dept. of Justice*, 823 F.2d 574 (D.C. Cir. 1987), *see* Motion at pp. 4-5. Like *Church of Scientology,* this is an out-of-circuit case in which the Department of Justice refused to produce certain materials in response to a FOIA request, relying in part on Rule 6(e), and in which the Circuit Court found that it had insufficient information upon which to conclusively rule – accordingly, the case was remanded to the District Court. The Court did, however, articulate in dicta its formulation of the general rule:

> There is no per se rule against disclosure of any and all information which has reached the grand jury chambers; as the district court correctly observed, the touchstone is whether disclosure would "tend to reveal *some secret aspect of the grand jury's investigation*" such matters as " 'the *identities of witnesses* or jurors, the substance of testimony, *the strategy or direction of the investigation*, *the deliberations or questions of jurors*, and the like.' " The disclosure of information "coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury" is not prohibited. *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 870 (D.C.Cir.1981); see also *Dresser*, 628 F.2d at 1383 ("The fact that a grand jury has subpoenaed documents concerning a particular matter does not insulate that matter from investigation in another forum."); *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir.1960) ( Rule 6(e)'s purpose is not "to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury"). Automatically sealing all

> that a grand jury sees or hears would enable the government to shield any information from public view indefinitely by the simple expedient of presenting it to the grand jury.

823 F.2d at 582 (emphasis added). Again, however, the Court provided no guidance on how this rule was to be applied since it did not specifically rule that any document was or was not to be produced.

Business records relating to financial transactions of Abudulla al-Kidd and his spouse may have been independently generated, but it is inescapable that they will reveal "some secret aspect(s) of the grand jury's investigation," such as "the strategy or direction of the investigation." The very fact that these materials were subpoenaed reveals that the grand jury scrutinized the financial records of Mr. Al-Hussayen and persons with whom he was acquainted. The records would also undoubtedly reveal the time periods of interest to the grand jury, and very likely the specific transactions or groups of transactions of Mr. al-Kidd upon which it focused. The records did not magically materialize at the grand jury – they were produced by someone, and they will thus tend to reveal the "identities of witnesses." The fact that Mr. al-Kidd's records were sought but that he was not indicted at least impliedly reveals "the deliberations or questions of jurors."

Of course, the above arguments are made as a matter of logical deduction, not as a result of reviewing the actual materials which the government contemplates disclosing. A review of the actual materials may suggest or reveal other respects in which the inner workings of the grand jury would be revealed by their disclosure. At the very least, the Court should take a course analogous to that taken in *Church of Scientology* and *Senate of the Com. of Puerto*

*Rico,* and require the government to produce *in camera* and to counsel for Mr. Al-Hussayen the specific materials it intends to release so that counsel and the Court may address with specificity – as opposed to in abstract – whether these materials would reveal any information about the grand jury's investigation.

Additionally, grand jury secrecy must serve to protect Mr. Al-Hussayen, who was acquitted of the criminal charges under investigation in the grand jury and, to the degree those documents reveal information about him they may not be disclosed. *Sells,* 463 U.S. at 424.

**b. *No showing of particularized need***

To demonstrate a particularized need for grand jury materials, a party must show that the material is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that its request is structured to cover only material so needed. *Douglas Oil*, 441 U.S. at 222; *In re Grand Jury Proceedings*, 62 F.3d 1175, 1179 (9th Cir. 1995). The party seeking disclosure has the burden of demonstrating this balance. *Douglas Oil*, 441 U.S. at 223; *Grand Jury Proceedings*, 62 F.3d at 1179.

The requirement that a party seeking disclosure of grand jury materials must show particularized need continues to apply after the grand jury has concluded its operations. *Fischbach,* 776 F.2d 839 at 844. In considering the effects of disclosure on grand jury proceedings, the courts must also consider the possible effect upon the functioning of future grand juries. *Douglas Oil*, 441 U.S. at 222; *Fischbach,* 776 F.2d at 844. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward

and aid the grand jury in the performance of its duties. *Id.* As the Ninth Circuit held in *Fischbach*, acquitted defendants continue to have a strong interest in the confidentiality of the grand jury process:

> Other factors contribute to the need for continued secrecy in this case. *Most important* is the acquittal of defendants Fischbach & Moore, L.K. Comstock & Company, and Lord Electric. These defendants have been subjected to charges before the grand jury which have thus far proven unfounded, thereby *increasing* their interest in limiting disclosure of the grand jury proceedings.

*Fischbach*, 776 F.2d at 844 (emphasis added).

1. *Business records pertaining to financial transactions of Abdullah al-Kidd or his spouse, including certifications of those records*.

Initially, we note that it is unclear what the government means by "business records pertaining to financial transactions of Abdullah al-Kidd or his spouse." In the absence of a clear specification of what records are referred to, and whether this entails the release of Mr. Al-Hussayen's financial records, the Court is unable to make an accurate judgment of the propriety of breaching grand jury secrecy. Again, the Court should not give the government a blank check to make its own determination of what materials fit within various categories, without affording counsel the opportunity to review the actual materials to be disclosed.

Nor has the government demonstrated why it is unable to obtain the financial transactions of Mr. al-Kidd or his spouse except through grand jury records. In the process of the pending civil case, the government presumably may obtain through third party depositions and subpoenas all such financial records without invading the secrecy of the grand jury process. But convenience is not an adequate reason for violating grand jury secrecy. As the *Sells* Court put it,

> [o]f course, it would be of substantial help to a Justice Department civil attorney if he had free access to a storehouse of evidence compiled by a grand jury; but that is of a different order from the prosecutor's need for access. The civil lawyer's need is ordinarily nothing more than a matter of saving time and expense. The same argument could be made for access on behalf of any lawyer in another government agency, or indeed, in private practice. We have consistently rejected the argument that such savings can justify a breach of grand jury secrecy. *E.g., Procter & Gamble*, 356 U.S., at 682-683; *Smith v. United States*, 423 U.S. 1303, 1304 (1975) (Douglas, J., in chambers); *see also Abbott*, 460 U.S. at ___, 103 S.Ct., at 1361. In most cases, the same evidence that could be obtained from the grand jury will be available through ordinary discovery or other routine avenues of investigation. If, in a particular case, ordinary discovery is insufficient for some reason, the Government may request disclosure under a (C)(i) court order.

*Sells*, 463 U.S. at 431.

2. *Government-prepared summaries or analyses of business records pertaining to financial transactions of Abdullah al-Kidd or his spouse*

For the reasons set forth above, Mr. Al-Hussayen also objects to production of government prepared summaries or analyses of business records. These obviously did not predate the investigation, and were not prepared independently of it. The government may seek business records related to Mr. al-Kidd through third party discovery and prepare whatever summaries it wishes. This is no justification for invasion of the secrecy of the grand jury process. Moreover, the government should not be permitted to disclose such materials to the extent they are Mr. Al-Hussayen's records.

3. *Government-prepared memoranda of interviews of individuals*

The investigation of Mr. Al-Hussayen was one of the most extensive in the history of the District of Idaho. This endeavor generated untold numbers of interviews of individuals that had nothing to do with Mr. al-Kidd. The government has made no showing of how its

sweeping request to permit it to use all such interviews is necessary to its defense of the civil proceeding involving Mr. al-Kidd. Indeed, given the unexplained breadth of this request, the government should be required to certify that it has not previously released these materials without permission, and is now simply seeking to justify this release retroactively. The government's handling of the present case in no way justifies its request for unfettered authority to decide what information does or does not fit into various abstract categories.

**3. Conclusion**

For all these reasons, the government's motion should be denied.

DATED this 30th day of June, 2007.

NEVIN, BENJAMIN, McKAY & BARTLETT LLP

/s/
David Z. Nevin

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to all parties on the Electronic Mail Notice List.

/s/
David Z. Nevin